IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AT WHEELING

THOMAS G. FIGANIAK and
VALERIE A. FIGANIAK, as
Administrators of the Estate of
Kevin Figaniak,

      Plaintiffs,

v.

                                       Civil Action No. _5_:15-cv-_111_ (Stamp)
                                       Electronically filed: 08/24/2015

FRATERNAL ORDER OF OWL'S HOME NEST,
LOYAL ORDER OF OWLS NEST LODGE 2558
d/b/a THE OWLS NEST, a West Virginia corporation,
YE OLDE ALPHA, INC., a West Virginia corporation,
CRAIG TYLER PEACOCK, individually
JARRETT CHANDLER, individually, and
TYLER JOHNSON, individually,

      Defendants.

## COMPLAINT

      Comes now Plaintiffs, Thomas G. Figaniak and Valerie A. Figaniak, husband and wife,

as Co-Administrators and Personal Representatives of the Estate of Kevin Figaniak, deceased, by

counsel and for their Complaint allege and say as follows:

### NATURE OF THE ACTION

      1.      This is a negligence and wrongful death and survival action to recover damages as

alleged herein pursuant to the West Virginia Wrongful Death Statute that were caused by the

negligence of the Defendants. The Plaintiffs are citizens and residents of the Commonwealth of

Pennsylvania and Defendants are all as alleged herein citizens and residents of the States of West

Virginia, Florida, Ohio and Louisiana so there is complete diversity of citizenship.

## JURISDICTION AND VENUE

2.      That jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §1332. In this civil action the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs and is based on diversity of citizenship jurisdiction as alleged herein. Jurisdiction and venue are also proper herein under the laws and Constitution of the United States of America and  the conduct giving rise to this cause of action occurred in the City of Wheeling, Ohio County, West Virginia.

## PARTIES

3.      The Plaintiffs, Thomas G. Figaniak and Valerie A. Figaniak ("Thomas and Valerie") as Co-Administrators of the Estate of Kevin Figaniak, are residents and citizens of Bucks County, Pennsylvania.  Thomas and Valerie were duly appointed as the Co-Administrators of the Estate of Kevin Figaniak on November 6, 2014, by the Register of Wills of Bucks County, Pennsylvania.

4.      Defendant Fraternal Order of Owl's Home Nest is the National Chapter with which defendant Loyal Order of Owl's Nest Lodge 2558 is affiliated.

5.      Defendant, Fraternal Order of Owl's Home Nest is a corporation or other business entity organized and existing under and by virtue of the laws of West Virginia, doing its usual and customary business in the state of West Virginia with its principal place of business located at 616 24th Street, Parkersburg, West Virginia.

6.      Defendants Fraternal Order of Owl's Home Nest and Loyal Order of Owl's Nest Lodge 2558 shall be collectively referred to as "Owls Nest" throughout this Complaint.

2

7.      Defendant, Loyal Order of Owls Nest Lodge 2558, d/b/a The Owls Nest, ("Owls Nest") is a corporation or other business entity organized and existing under and by virtue of the laws of West Virginia, doing its usual and customary business in the state of West Virginia, with its principal place of business located at 89 Edington Lane, Wheeling, West Virginia 26003.

8.      Accordingly, this Honorable Court has personal jurisdiction over Owls Nest.

9.      Defendant, Ye Olde Alpha, Inc. ("Alpha") is a for-profit corporation or other business entity organized and existing under and by virtue of the laws of West Virginia, doing its usual and customary business in the state of West Virginia, with its principal place of business located at 50 Carmel Road, Wheeling, West Virginia 26003.

10.     Accordingly, this Honorable Court has personal jurisdiction over Alpha.

11.     Defendant, Craig Tyler Peacock ("Peacock") is a resident and citizen of Hendry County, Florida.  Defendant Peacock falls under the West Virginia Long-Arm Statute, W.Va.Code § 56-3-33(a)(3), as he has caused a tortious injury in West Virginia.  Additionally, because Defendant Peacock worked and lived in West Virginia and was arrested for the tortious injury he caused in West Virginia, it is reasonably foreseeable to him to be brought into court in West Virginia.  Defendant Peacock has established the minimum contacts necessary in West Virginia for this Honorable Court to have personal jurisdiction over him.  Accordingly, this Honorable Court has personal jurisdiction over Defendant Peacock.

12.     Defendant, Jarrett Chandler ("Chandler") is a resident and citizen of Winnfield County, Louisiana.  Defendant Chandler falls under the West Virginia Long-Arm Statute, W.Va.Code § 56-3-33(a)(3), as he has caused a tortious injury in West Virginia.  Additionally, because Defendant Chandler worked and lived in West Virginia and was arrested for the tortious

injury he caused in West Virginia, it is reasonably foreseeable to him to be brought into court in West Virginia. Defendant Chandler has established the minimum contacts necessary in West Virginia for this Honorable Court to have personal jurisdiction over him. Accordingly, this Honorable Court has personal jurisdiction over Defendant Chandler.

13.     Defendant, Tyler Johnson ("Johnson"), is a resident and citizen of Franklin County, Ohio. Defendant Johnson falls under the West Virginia Long-Arm Statute, W.Va.Code § 56-3-33(a)(3), as he caused a tortious injury by an act or omission in West Virginia. Additionally, because Defendant Johnson attended Wheeling Jesuit University in West Virginia and lived in West Virginia for four years it is reasonably foreseeable to him to be brought into court in West Virginia. Defendant Johnson has established the minimum contacts necessary in West Virginia for this Honorable Court to have personal jurisdiction over him. Accordingly, this Honorable Court has personal jurisdiction over Defendant Johnson.

## FACTS

14.     At the time of his death on August 31, 2013, Kevin Figaniak was twenty one (21) years old Wheeling Jesuit University student, who was walking with his friend, Defendant Johnson, in the area of Defendant Owls Nest and Defendant Alpha's bars, located in the City of Wheeling, Ohio County, West Virginia, on his way home.

15.     Kevin Figaniak is survived by his mother and his father.

16.     As a result of the tortious conduct of Defendants, as alleged infra, Kevin Figaniak suffered physical pain, emotional distress and mental anguish and suffering before dying as a result of his injuries.

4

17.     On and prior to August 31, 2012, Defendant Owls Nest owned and operated a bar on a daily basis and, thus, regularly conducted and continues to conduct business in the City of Wheeling, Ohio County, West Virginia.

18.     At all times relevant hereto, Owls Nest was acting by and through its agents, servants, workers and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Owls Nest.

19.     On and prior to August 31, 2012, Defendant Alpha owned and operated a bar on a daily basis and, thus, regularly conducted and continues to conduct business in the City of Wheeling, Ohio County, West Virginia.

20.     At all times relevant hereto, Owls Nest was acting by and through its agents, servants, workers and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Owls Nest.

21.     On or about August 31, 2012, Plaintiffs' decedent was walking near Defendant Owls Nest and Defendant Alpha's bar on his way home with his friend Tyler Johnson ("T.J") when Craig Tyler Peacock ("Peacock") and Jarrett Chandler ("Chandler") viciously attacked Kevin and T.J.

22.     In his drunken state, Defendant Johnson negligently taunted the assailants.

23.     During the incident, Defendants Peacock and Chandler both struck Kevin numerous times and knocked him to the ground.

24.     After causing devastating injuries to Kevin Figaniak, Defendants Peacock and Chandler left Kevin unconscious on the ground.

25.     While Kevin was on the ground and defenseless, Defendant Peacock kicked Kevin in the head, killing him.

26.     During this altercation, Defendants Peacock and Chandler were fueled by the excessive amounts of alcohol that they were negligently sold by the defendant bars.

27.     On the night of this incident, Defendants Peacock and Chandler began consuming alcohol at dinner where they each had several alcoholic drinks.

28.     Defendants Peacock and Chandler continued to consume alcohol at approximately 8:30 p.m. at Defendant Chandler's trailer when they took multiple shots of Jägermeister (a black licorice liquor).

29.     On the evening of August 30, 2013 and into the early hours of August 31, 2013, Defendants Peacock and Chandler traveled back and forth between Owls Nest and Alpha, consuming alcohol each time they entered Owls Nest and Alpha.

30.     Defendants Peacock and Chandler were going "drink for drink," where each person would try to keep up and match the total number of drinks that the other person had consumed.

31.     Over the course of the evening, Defendants Peacock and Chandler each had a minimum of ten (10) to eleven (11) alcoholic beverages.

32.     Defendant Johnson was similarly intoxicated, having been served so much alcohol at Alpha that he could barely stand and needed to be cut off by the bartender.

33.     Immediately after taking the life of Kevin Figaniak, Defendants Peacock and Chandler went to another bar/lounge called "Jill's" where Defendant Peacock was denied service of alcohol because he was in a visibly and noticeably intoxicated condition.

6

34.     At all times relevant hereto, Owls Nest was a bar, restaurant, and/or nightclub that sold and/or dispensed alcoholic beverages.

35.     At all times relevant hereto, Alpha was a bar, restaurant, and/or nightclub that sold and/or dispensed alcoholic beverages.

36.     On or about the evening of August 30, 2013 and into the early hours of August 31, 2013, Defendants Peacock and Chandler were lawfully on the premises together at Owls Nest.

37.     At that time, Defendants Peacock and Chandler were consuming alcoholic beverages served to them by Defendant Owls Nest's employees who were acting within the scope of their authority on the evening of August 30, 2013 and into the early hours of August 31, 2013.

38.     On or about the evening of August 30, 2013 and into the early hours of August 31, 2013, Defendants Peacock and Chandler were lawfully on the premises together at Alpha.

39.     At that time, Defendants Peacock and Chandler were consuming alcoholic beverages served to them by Alpha's employees who were acting within the scope of their authority on the evening of August 30, 2013 and into the early hours of August 31, 2013.

40.     Immediately prior to viciously attacking Kevin Figaniak, Defendant Peacock had been consuming alcohol at Owls Nest bar.

41.     While on the premises of Owls Nest bar, Defendants Peacock and Chandler were in a visibly and noticeably intoxicated condition and were served alcohol in that condition.

42.     Immediately prior to viciously attacking Kevin Figaniak, Defendant Peacock had been consuming alcohol at Alpha bar.

43.     While on the premises of Alpha bar, Defendants Peacock, Chandler and Johnson were in a visibly and noticeably intoxicated condition and were served alcohol in that condition.

7

44.     Defendant Owls Nest, by and through their agents, servants, workers and employees, willfully and unlawfully served and continued to serve alcoholic beverages to Defendants Peacock and Chandler when they were in a visibly and noticeably intoxicated condition, in direct violation of the West Virginia Dram Shop Act, W.Va.Code § 11-16-18 et seq., when they knew, or had reason to know, that Defendants Peacock and Chandler constituted a risk of harm to others by virtue of being intoxicated.

45.     Defendant Alpha, by and through their agents, servants, workers and employees, willfully and unlawfully served and continued to serve alcoholic beverages to Defendants Peacock, Chandler and Johnson when they were in a visibly and noticeably intoxicated condition, in direct violation of the West Virginia Dram Shop Act, W.Va.Code § 11-16-18 et seq., when they knew, or had reason to know, that Defendants Peacock, Chandler and Johnson constituted a risk of harm to others by virtue of being intoxicated.

46.     The negligent sale of alcoholic beverages by Defendant Owls Nest to Defendants Peacock and Chandler was a direct and proximate cause of Kevin Figaniak's injuries and death.

47.     The negligent sale of alcoholic beverages by Defendant Alpha to Defendants Peacock, Chandler and Johnson was a direct and proximate cause of Kevin Figaniak's injuries and death.

48.     The defendants are jointly and/or severally liable for the injuries and death of Kevin Figaniak.

## COUNT I - NEGLIGENCE

**THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. OWLS NEST**

8

49. Plaintiffs incorporate all preceding paragraphs here.

50. Defendant Owls Nest failed to comply with their duty to not serve alcohol to visibly and noticeably intoxicated patrons pursuant to W.Va.Code § 11-16-18, which includes, but is not limited to:

    a.    Failing to employ competently trained bartenders;

    b.    Failing to employ competently trained servers and/or staff;

    c.    Failing to instruct and train the bartending staff regarding appropriate amounts of alcoholic beverages to serve guests;

    d.    Failing to instruct and train the bartending staff in recognizing when patrons are intoxicated;

    e.    Failing to instruct and train the bartending staff in recognizing when patrons are visibly intoxicated;

    f.    Failing to instruct and train the bartending staff in recognizing when patrons are too intoxicated to operate a vehicle safely;

    g.    Failing to instruct and train the servers and/or staff regarding appropriate amounts of alcoholic beverages to serve guests;

    h.    Failing to instruct and train the servers and/or staff in recognizing when patrons are intoxicated;

    i.    Failing to instruct and train the servers and/or staff in recognizing when patrons are visibly intoxicated;

    j.    Failing to develop and enforce policies to prevent patrons from being served to the point of intoxication;

    k.    Failing to develop and enforce policies to prevent patrons from being served when visibly intoxicated;

    l.    Failing to develop and enforce policies to protect the public from intoxicated patrons after they leave the licensed establishment;

    m.    Serving defendant Peacock alcohol past the point of visible intoxication;

9

n.      Serving defendant Chandler alcohol past the point of visible intoxication;

o.      Continuing to serve alcoholic beverages to defendant Peacock at a time when they knew or should have known he was already intoxicated;

p.      Continuing to serve alcoholic beverages to defendant Chandler at a time when they knew or should have known he was already intoxicated;

q.      Continuing to serve alcoholic beverages to defendant Peacock after he was visibly intoxicated;

r.      Continuing to serve alcoholic beverages to defendant Chandler after he was visibly intoxicated;

51.     By reason of the negligence of Owls Nest bar, as set forth above, Kevin Figaniak suffered serious, catastrophic and fatal injuries, including but not limited to multiple blunt force trauma head injuries.  Kevin Figaniak sustained conscious pain and suffering, and died as a result of the brutal attack by Defendants Peacock and Chandler and the Estate of Kevin Figaniak suffered losses as set forth in West Virginia code § 55-7-5 to -8(a).

## COUNT II - NEGLIGENCE

### THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. ALPHA

52.     Plaintiffs incorporate all preceding paragraphs here.

53.     Defendant Alpha failed to comply with their duty to not serve alcohol to visibly and noticeably intoxicated patrons pursuant to W.Va.Code § 11-16-18, which includes, but is not limited to:

a.      Failing to employ competently trained bartenders;

b.      Failing to employ competently trained servers and/or staff;

c.      Failing to instruct and train the bartending staff regarding appropriate amounts of alcoholic beverages to serve guests;

10

d.   Failing to instruct and train the bartending staff in recognizing when patrons are intoxicated;

e.   Failing to instruct and train the bartending staff in recognizing when patrons are visibly intoxicated;

f.   Failing to instruct and train the bartending staff in recognizing when patrons are too intoxicated to operate a vehicle safely;

g.   Failing to instruct and train the servers and/or staff regarding appropriate amounts of alcoholic beverages to serve guests;

h.   Failing to instruct and train the servers and/or staff in recognizing when patrons are intoxicated;

i.   Failing to instruct and train the servers and/or staff in recognizing when patrons are visibly intoxicated;

j.   Failing to develop and enforce policies to prevent patrons from being served to the point of intoxication;

k.   Failing to develop and enforce policies to prevent patrons from being served when visibly intoxicated;

l.   Failing to develop and enforce policies to protect the public from intoxicated patrons after they leave the licensed establishment;

m.   Serving defendant Peacock alcohol past the point of visible intoxication;

n.   Serving defendant Chandler alcohol past the point of visible intoxication;

o.   Serving defendant Johnson alcohol past the point of visible intoxication;

p.   Continuing to serve alcoholic beverages to defendant Peacock at a time when they knew or should have known he was already intoxicated;

q.   Continuing to serve alcoholic beverages to defendant Chandler at a time when they knew or should have known he was already intoxicated;

r.   Continuing to serve alcoholic beverages to defendant Peacock after he was visibly intoxicated;

s.      Continuing to serve alcoholic beverages to defendant Chandler after he was visibly intoxicated;

54.     By reason of the negligence of Alpha bar, as set forth above, Kevin Figaniak suffered serious, catastrophic and fatal injuries, including but not limited to multiple blunt force trauma head injuries.  Kevin Figaniak sustained conscious pain and suffering, and died as a result of the brutal attack by Peacock and Chandler.

55.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs' decedent suffered physical pain, emotional distress and mental anguish and suffering before dying as a result his injuries and the Estate of Kevin Figaniak suffered losses as set forth in West Virginia code § 55-7-5 to -8(a).

## COUNT III - NEGLIGENCE

### THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. CHANDLER

56.     Plaintiffs incorporate all preceding paragraphs here.

57.     Defendant, Chandler, owed a duty to Plaintiff's deceased, Kevin Figaniak, and, in viciously attacking Kevin, breached that duty by acting with excessive and unreasonable force, negligently and without due care for the reasons articulated in this Complaint.

58.     Defendant Chandler was unreasonable, negligent, and breached his duty to exercise due care generally and in the following respects:

a.      Failing to attempt to retreat from the altercation;

b.      Failing to use appropriate, proportionate, and/or reasonable force;

c.      Using excessive, disproportionate and unreasonable force;

d.      Abandoning Kevin while he lay unconscious on the ground;

e.      Striking Kevin when physical force was neither required nor permitted;

f.      Continuing to strike Kevin when he could not have possibly been a threat;

g.      Failing to attempt to stop Defendant Peacock from striking and kicking Kevin;

h.      Acting unreasonably throughout the altercation;

i.      Failing to exercise reasonable care.

59.     As a result of Defendant Chandler's unreasonableness, negligence and failure to act with due care, Plaintiff's decedent, Kevin Figaniak, was caused to suffer serious and fatal injuries to his head.

## COUNT IV - ASSAULT AND BATTERY

### THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. CHANDLER

60.     Plaintiffs incorporate all preceding paragraphs here.

61.     Defendant, Chandler, in viciously attacking Plaintiffs' unarmed decedent, engaged in intentional, wanton, willful and outrageous conduct, acted with deliberate malice, was grossly and outrageously negligent, acted with reckless disregard of an with deliberate callous and reckless indifference to the rights, interest, welfare and safety of the plaintiff for the reasons articulated in this Complaint.

62.     As a result of Defendant Chandler's intentional, wanton, willful and outrageous conduct, Kevin Figaniak was caused to suffer an immediate and reasonable apprehension of a harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

13

63.   As a result of Defendant Chandler's intentional, wanton, willful and outrageous conduct, Kevin Figaniak was caused to suffer serious and fatal injuries to his head.

64.   Defendant, Chandler, intentionally initiated a violent assault and bodily harm on Kevin Figaniak by inflicting serious physical wounds caused by repeatedly striking Kevin, thereby violating the common law of the State of West Virginia whose courts have adopted the principles of the Restatement 2d of Torts concerning the offenses of assault and battery, including, without limitation:

§ 13 Battery: Harmful Contact

(1)   An actor is subject to liability to another for battery if:

    a.   he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.   a harmful contact with the person of the other directly or indirectly results.

§ 15 What Constitutes Bodily Harm

Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness.

§ 18 Battery: Offensive Contact

(1)   An actor is subject to liability to another for battery if:

    a.   he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.   an offensive contact with the person of the other directly or indirectly results.

§ 21 Assault

(1)     An actor is subject to liability to another for assault if;

a.      he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

b.      the other is thereby put in such imminent apprehension.

65.     By reason of the carelessness, negligence, recklessness and/or intentional conduct of Defendant, Chandler, Plaintiff's decedent, Kevin Figaniak, was caused to sustain serious and fatal injuries as more fully described in the preceding paragraphs of this Complaint.

66.     Defendant, Chandler, intended to cause a harmful contact with the body of Kevin Figaniak that directly resulted in harmful contact with the body of Kevin.

## COUNT V - NEGLIGENCE

**THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. PEACOCK**

67.     Plaintiffs incorporate all preceding paragraphs here.

68.     Defendant, Peacock, owed a duty to Plaintiff's deceased, Kevin Figaniak, and, in viciously attacking Kevin, breached that duty by acting with excessive and unreasonable force, negligently and without due care for the reasons articulated in this Complaint.

69.     Defendant Peacock was unreasonable, negligent, and breached his duty to exercise due care generally and in the following respects:

a.      Failing to attempt to retreat from the altercation;

b.      Failing to use appropriate, proportionate, and/or reasonable force;

c.      Using excessive, disproportionate and unreasonable force;

d.      Abandoning Kevin while he lay unconscious on the ground;

15

e.       Striking Kevin when physical force was neither required nor permitted;

f.       Repeatedly kicking Kevin in the head once Kevin had been knocked to the ground when he could not have possibly been a threat;

g.       Repeatedly kicking Kevin in the head with deadly force when deadly force was neither required nor permitted;

h.       Failing to attempt to stop Defendant Chandler from striking Kevin;

i.       Failing to attempt to flee the scene before inflicting deadly force;

j.       Acting unreasonably throughout the altercation;

k.       Failing to exercise reasonable care.

70.       As a result of Defendant Peacock's unreasonableness, negligence and failure to act with due care, Plaintiff's decedent, Kevin Figaniak, was caused to suffer serious and fatal injuries to his head.

## COUNT VI - ASSAULT AND BATTERY

### THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. PEACOCK

71.       Plaintiffs incorporate all preceding paragraphs here.

72.       Defendant, Peacock, in viciously attacking Plaintiffs' unarmed decedent, engaged in intentional, wanton, willful and outrageous conduct, acted with deliberate malice, was grossly and outrageously negligent, acted with reckless disregard of an with deliberate callous and reckless indifference to the rights, interest, welfare and safety of the plaintiff for the reasons articulated in this Complaint.

73.       As a result of Defendant Peacock's intentional, wanton, willful and outrageous conduct, Kevin Figaniak was caused to suffer an immediate and reasonable apprehension of a

harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

74.     As a result of Defendant Peacock's intentional, wanton, willful and outrageous conduct, Kevin Figaniak was caused to suffer serious and fatal injuries to his head.

75.     Defendant, Peacock, intentionally initiated a violent assault and bodily harm on Kevin Figaniak by inflicting serious physical wounds caused by repeatedly striking Kevin, thereby violating the common law of the State of West Virginia whose courts have adopted the principles of the Restatement 2d of Torts concerning the offenses of assault and battery, including, without limitation:

§ 13 Battery: Harmful Contact

(1)     An actor is subject to liability to another for battery if:

        a.     he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

        b.     a harmful contact with the person of the other directly or indirectly results.

§ 15 What Constitutes Bodily Harm

Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness.

§ 18 Battery: Offensive Contact

(1)     An actor is subject to liability to another for battery if:

        a.     he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

17

b.    an offensive contact with the person of the other directly or indirectly results.

§ 21 Assault

(1)    An actor is subject to liability to another for assault if;

    a.    he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.     the other is thereby put in such imminent apprehension.

76.    By reason of the carelessness, negligence, recklessness and/or intentional conduct of Defendant, Peacock, Plaintiff's decedent, Kevin Figaniak, was caused to sustain serious and fatal injuries as more fully described in the preceding paragraphs of this Complaint.

77.    Defendant, Peacock, intended to cause a harmful contact with the body of Kevin Figaniak that directly resulted in harmful contact with the body of Kevin.

## COUNT VII - NEGLIGENCE

### THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. JOHNSON

78.    Plaintiffs incorporate all preceding paragraphs here.

79.    Defendant, Johnson, owed a duty to Plaintiff's deceased, Kevin Figaniak, and, in provoking the altercation in which Kevin was viciously attacked and killed, breached that duty by acting negligently and without due care for the reasons articulated in this Complaint.

80.    Defendant Johnson was unreasonable, negligent, and breached his duty to exercise due care generally and in the following respects:

    a.    Provoking the physical altercation that resulting in the death of Kevin Figaniak;

18

b.      Acting unreasonably in the provocation of the physical altercation;

c.      Failing to exercise reasonable care.

81.     As a result of Defendant Johnson's unreasonableness, negligence and failure to act with due care, Plaintiff's decedent, Kevin Figaniak, was caused to suffer serious and fatal injuries to his head.

## COUNT VIII - WRONGFUL DEATH

**THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. ALL DEFENDANTS**

82.     Plaintiffs incorporate all preceding paragraphs here.

83.     Defendants acted negligently and caused the death of Kevin Figaniak, as set forth in the preceding paragraphs.

84.     Plaintiffs Thomas and Valerie Figaniak bring this action as personal representatives of Kevin Figaniak on behalf of those entitled by law to recover for his wrongful death, under and by virtue of West Virginia Code §55-7-6, commonly known as the West Virginia Wrongful Death Act, and claim all benefits of the Wrongful Death Act or law governing wrongful death actions.

85.     As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries have been, continue to be and will be in the future wrongfully deprived of large and various sums of money which decedent would have contributed to their support.

86.     As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries have incurred or have been caused to incur various funeral, burial, estate and administrative expenses.

87.     As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries have been, continue to be and will be in the future wrongfully deprived of the services, society and comfort which decedent would have provided including work around the home, physical comfort and services.

## COUNT IX - SURVIVAL

**THOMAS and VALERIE FIGANIAK, as Co-Administrators and Personal Representatives of the Estate of KEVIN FIGANIAK, deceased v. ALL DEFENDANTS**

88.     Plaintiffs incorporate all preceding paragraphs here.

89.     Plaintiffs, Thomas and Valerie Figaniak, Co-Administrators and Personal Representatives of the Estate of Kevin Figaniak, also brings this action under and by virtue of W.Va.Code § 55-7-5 to -8(a), commonly known as the West Virginia Wrongful Death and Survival Act.

90.     The estate of Kevin Figaniak claims damages for pain and suffering undergone by the decedent as a result of the defendants' tortious conduct, up to and including the time of death, and damages for the net amount that Kevin Figaniak would have earned from the date of his death to the end of his life expectancy.

## DAMAGES

91.     The acts and omissions of Defendants described above and incorporated *in haec verba* also entitle Plaintiff to an award of compensatory damages.

92.     As a direct and proximate result of the actions and conduct of the Defendants described herein from the brutal and fatal attack, Kevin Figaniak endured great anguish and pain

as he was dying from his injuries and for damages compensable and permitted by virtue of West Virginia Code § 55-7-8 (a) and which damages expressly survive herein.

93.     That as a direct and proximate consequence of the actions and conduct of Defendants as described herein, the distributees and Estate of Kevin Figaniak established pursuant to West Virginia Code §55-7-6 are entitled to damages for the following for his wrongful death:

   a.     sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent Kevin Figaniak;

   b.     compensation for reasonably expected loss of (i) income of the decedent Kevin Figaniak, and (ii) services, protection, care and assistance provided to him;

   c.     expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in his death; and

   d.     funeral and burial expenses.

WHEREFORE, Plaintiffs demand judgment, jointly and severally, against the defendants as follows:

94.     Compensatory and punitive damages allowed under the law for physical pain, emotional distress and mental anguish and suffering of Plaintiffs' decedent before dying as a result of his injuries;

95.     Compensatory damages allowed under the law for the wrongful death of Plaintiffs' decedent and set forth under West Virginia's Wrongful Death Act;

96.     Costs and attorney fees expended in prosecution of this matter;

97.     Pre-judgment and post-judgment interest on any award as provided under the law;

98.     Any other relief to which the Court deems plaintiffs are entitled.

PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY


    /s/   *Guy R. Bucci*
Guy R. Bucci, Esquire (WVSB #0521)
213 Hale Street, Suite 200
Charleston, WV 25301
(304) 345-0346

Robert Mongeluzzi, Esquire (PASB #36283)
Jeffrey P. Goodman, Esquire (PASB #309433)
Saltz, Mongeluzzi, Barrett, and Bendesky, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 496-8282
        *Pro Hac Vice pending*