```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

THOMAS G. FIGANIAK and
VALERIE A. FIGANIAK, as
Administrators of the
Estate of Kevin Figaniak,

      Plaintiffs,

v.                                    Civil Action No. 5:15CV111
                                                                                         (STAMP)

FRATERNAL ORDER OF OWL'S HOME NEST,
LOYAL ORDER OF OWLS NEST LODGE 2558,
d/b/a THE OWLS NEST,
a West Virginia corporation,
YE OLDE ALPHA, INC.,
a West Virginia corporation,
CRAIG TYLER PEACOCK, individually,
JARRETT CHANDLER, individually,
and TYLER JOHNSON, individually,

      Defendants.

**MEMORANDUM OPINION AND ORDER
REGARDING PARTIES' MOTIONS IN LIMINE**[1]

      Defendant Tyler Johnson ("Johnson") has filed five motions in limine to preclude certain evidence, and the plaintiffs have filed one motion in limine to preclude the defendants from presenting certain evidence. The trial in this civil action is scheduled to commence on July 25, 2017. This Court will address those motions in limine and set forth its findings, as discussed below.[2]

---

[1] This Memorandum Opinion and Order sets forth in more detail the rulings given at the supplemental pretrial conference held on July, 12, 2017.

[2] For a more thorough background of this civil action, see ECF No. 175.

1. <u>Johnson's Motion in Limine #1 - To Exclude the Testimony of Wayne K. Ross, M.D.</u> (ECF No. 143) - DENIED.

Johnson asks this Court to preclude or limit the testimony of the plaintiffs' expert, Wayne K. Ross, M.D., a forensic pathologist. The plaintiffs intend to present Dr. Ross's conclusions that all blows to their deceased son's ("Kevin") head, including those attributable to Johnson, contributed to Kevin's death and that Kevin suffered severe conscious pain when being hit and for several seconds after losing consciousness.

Johnson does not contest Dr. Ross's qualifications to be certified as an expert on forensic pathology, his methods, or the usefulness of his testimony to the jury. Rather, he argues that Dr. Ross's opinions are unreliable because they are not based on sufficient facts or data, and because he did not reliably apply his expertise to all of the facts of this case. Specifically, he argues that Dr. Ross's opinions are "based upon 'alternative facts' that cannot be established by independent evidence" and upon his own speculation about the circumstances of Kevin's injuries. ECF No. 143-1 at 1.

Rule 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide an opinion and testimony if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the

2

testimony is based on sufficient facts or data;" (3) the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The court "must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). To assess reliability of expert testimony, the court may consider:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (citing Daubert, 509 U.S. at 593-94). This is a flexible analysis because "[r]ather than providing a definitive or exhaustive list, [these factors] merely illustrate[] the types of factors that will 'bear on the inquiry.'" Id. (citing Daubert, 509 U.S. at 593-94).

The differential diagnosis methodology used by Dr. Ross is "a standard scientific technique [to] identify[] the cause of a medical problem" that will not be excluded for failure to "rule out every possible alternative cause" so long as the expert provides some "explanation for why she has concluded [that an alternative cause] was not the sole cause." United States v. Chikvashvili, __ F.3d __, 2017 WL 2485295, *6-7 (4th Cir. June 9, 2017). Dr. Ross

based his medical conclusion on the physical evidence of trauma to Kevin's body and the autopsy. He concluded that he could not conclude to a degree of medical certainty that any one blow caused Kevin's death. He further concluded that Kevin would have suffered conscious pain when being hit and for several seconds after losing consciousness. While Johnson argues that Dr. Ross's conclusions are based on factual errors as to how the fight actually occurred, Dr. Ross made clear in his deposition testimony that his opinions were not based on the witnesses' testimony he reviewed but were "based upon the physical evidence and scientific methodology" outlined in his expert report. ECF No. 169-7 at 6. To the extent that the evidence of how the fight and the blows to Kevin's head actually occurred contradict or cast doubt on Dr. Ross's conclusions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Accordingly, the defendant's motion is DENIED.

2. <u>Johnson's Motion in Limine #2 – To Exclude the Testimony of Camille B. Wortman, Ph.D.</u> (ECF No. 144) – DENIED.

Johnson asks this Court to preclude or limit the testimony of the plaintiffs' expert Camille B. Wortman, Ph.D., a psychologist. The plaintiffs intend to introduce Dr. Wortman's testimony as evidence of their emotional suffering to prove damages. Johnson

argues that Dr. Wortman's opinions are not reliable because she relied only upon the plaintiffs' biased and inaccurate understandings of the circumstances of their son's death, rather than grounding her opinions in what actually happened.

Damages in a wrongful death action include "[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent." W. Va. Code § 55-7-6(c)(1). Thus, the plaintiffs' emotional reactions to what they believe happened to their son, regardless of bias and inaccuracies, are relevant to their damages. Dr. Wortman's reliance on her interviews of the plaintiffs, their deposition testimony, and their victim impact statements is proper for making a determination of the plaintiffs' mental perceptions and emotional states. Further, Dr. Wortman's conclusions will be helpful to the jury in evaluating the plaintiffs' grief and their beliefs about how their son died. Her analysis provides a framework for evaluating and understanding the plaintiffs' admittedly biased and inaccurate understandings of their son's death that will assist the jury in determining any damages for emotional harm. Accordingly, Johnson's second motion in limine (ECF No. 144) is DENIED.

3. <u>Johnson's Motion in Limine #3 - To Exclude Certain Testimony of Mr. and Mrs. Figaniak</u> (ECF No. 145) - DEFERRED.

Johnson argues that the plaintiffs should be precluded from testifying about the factual circumstances of their son's death,

5

Johnson's prior physical altercations, Johnson's statements to them in the hospital after the fight, and their opinions about other witnesses' characters for truthfulness.  The plaintiffs assert they intend to testify only about Johnson's post-fight statements to them, information about their son and their family, and about their emotional loss.

As discussed above, the plaintiffs' testimony about their son, their familial relationship, and their emotional loss is relevant to their damages.  However, this Court believes the admissibility of their testimony on other potential topics noted in Johnson's motion will be best considered in context at the trial.  Accordingly, Johnson's third motion in limine (ECF No. 145) is DEFERRED.

4.   <u>Johnson's Motion in Limine #4 - To Exclude the Testimony of George Barrett</u> (ECF No. 146) - DENIED.

Johnson asks this court to preclude the plaintiffs' expert economist George Barrett ("Barrett") from testifying about his conclusions based on one of the methodologies he used to calculate Kevin's lost earning capacity.  The plaintiffs intend to offer Barrett's testimony and conclusions regarding Kevin's lost earning capacity based upon two methods of analysis of economic data.  In his first analytical method, Barrett used salary data from a survey conducted by the National Association of Colleges and Employers ("NACE") to determine the median salary of a person with Kevin's

expected four-year degree. Barrett then applied "work-life adjustments" to the median salary to determine Kevin's expected lifetime earning capacity.

Johnson argues that Barrett's analysis is unreliable because the NACE data set is too small and because it did not reflect Kevin's precise major. He argues that Barrett should have use United States Census data rather than the NACE data set because it is larger and participation is compulsory.

The NACE data set is a 2016 salary survey frequently relied upon by economic experts, businesses, and educational institutions. The survey adheres to widely accepted statistical sampling methodology. While Census data may offer a more complete data set than the NACE data set, that does not mean the NACE data set is unreliable or does not adhere to widely accepted statistical methodology. Further, Barrett's methodology is sound and applies generally accepted economic analysis to estimate Kevin's lost earning capacity. Any inconsistencies regarding the data set or how Barrett's calculations relate specifically to Kevin are best developed through cross-examination and evidentiary context. Accordingly, Johnson's fourth motion is limine (ECF No. 146) is DENIED.

5. <u>Johnson's Motion in Limine #5 - To Exclude Evidence of Punitive Damages</u> (ECF No. 147) - GRANTED IN PART AS FRAMED AND DEFERRED IN PART.

Johnson asks this Court to preclude the plaintiffs from presenting any evidence or argument as to punitive damages. The plaintiffs seek punitive damages only against Johnson. Johnson specifically argues that, under West Virginia Code § 55-7-29, the plaintiffs are not entitled to punitive damages unless they first prove Johnson acted with a malicious state of mind. Thus, he asks this Court to preclude the plaintiffs from arguing they are entitled to punitive damages or presenting any evidence as to the amount of any punitive damages they seek. Johnson has since filed a supplemental brief to this motion requesting, in the alternative, that this Court bifurcate the issues of liability and punitive damages.

Section 55-7-29 provides that:

> An award of punitive damages may only occur . . . if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code § 55-7-29(a). The West Virginia Supreme Court of Appeals recently held that § 55-7-29 applies retroactively. <u>Martinez v. Asplundh Tree Expert Co.</u>, __ S.E.2d __, 2017 WL

2626648, *6-7 (W. Va. June 16, 2017). Thus, this Court finds it to apply in this civil action.

Further, the presentation at trial of evidence regarding the amount of punitive damages to be paid, especially evidence of Johnson's ability to pay, presents a substantial danger of unfair prejudice to Johnson. Such evidence has the potential to unfairly prejudice the jury's determination of Johnson's liability. This Court believes bifurcation is appropriate to abate the risk of such unfair prejudice. Accordingly, the trial of these proceedings will be bifurcated in accordance with the following procedure.[3]

---

[3]Section 55-7-29 suggests the following procedure:

(1) In the first stage of a bifurcated trial, the jury shall determine the liability for compensatory damages and the amount of compensatory damages, if any.

(2) If the jury finds during the first stage of a bifurcated trial that a defendant is liable for compensatory damages, then the court shall determine whether sufficient evidence exists to proceed with a consideration of punitive damages.

(3) If the court finds that sufficient evidence exists to proceed with a consideration of punitive damages, the same jury shall determine if a defendant is liable for punitive damages in the second stage of a bifurcated trial and may award such damages.

(4) If the jury returns an award for punitive damages that exceeds the amounts allowed under subsection (c) of this section, the court shall reduce any such award to comply with the limitations set forth therein.

W. Va. Code § 55-7-29(b).

During the first phase of trial, the jury will determine the defendants' liability for compensatory damages and the amount of any compensatory damages. The plaintiffs will also be permitted to present evidence that Johnson acted with "actual malice or with conscious, reckless and outrageous indifference" to Kevin's "health, safety and welfare." W. Va. Code § 55-7-29(a). If the jury finds that Johnson is liable for compensatory damages, the jury will then answer a special interrogatory on whether it finds by clear and convincing evidence that Johnson acted with "actual malice or with conscious, reckless and outrageous indifference" to Kevin's "health, safety and welfare." W. Va. Code § 55-7-29(a). If the jury finds that punitive damages are appropriate, the parties will be permitted to present evidence and argument regarding the amount of punitive damages to be paid, and the jury will then determine that amount.

This Court finds that bifurcation largely resolves Johnson's fifth motion in limine. Accordingly, Johnson's fifth motion in limine (ECF No. 147) is GRANTED IN PART AS FRAMED AND DEFERRED IN PART.

6. <u>Plaintiffs' Motion in Limine to Exclude Evidence of Alleged Prior Bad Acts By the Deceased Kevin Figaniak and the Nickname "Figaniak the Maniac"</u> (ECF No. 148) - DEFERRED.

The plaintiffs ask this Court to preclude the defendants from presenting evidence showing Kevin had violent propensities or a

10

short temper, any prior instances of Kevin's aggression, or Kevin's lacrosse nickname "Figaniak the Maniac." In response, the defendants argue that they intend to present such evidence only to rebut any evidence presented by the plaintiffs to show Kevin's character for peacefulness.

Federal Rule of Evidence 404 prohibits evidence of "a person's character or character trait" or of "a crime, wrong, or other act to prove a person's character" to show that "on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1), (b)(1). However, such evidence may be used for any other purpose if it is otherwise admissible.

It appears that the defendants' intended use of evidence of Kevin's violent propensities are barred by Rule 404. Similarly, any evidence presented by the plaintiffs to show that Kevin had a character for peacefulness to prove he was not aggressive or violent on the night of his death would be barred by Rule 404. However, because it is unclear how any evidence of Kevin's character will be presented and for what precise purposes, this Court believes that the plaintiffs' motion will be best determined in context at trial. Accordingly, the plaintiffs' motion in limine (ECF No. 148) is DEFERRED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      July 14, 2017

                                            <u>/s/ Frederick P. Stamp, Jr.</u>
                                            FREDERICK P. STAMP, JR.
                                            UNITED STATES DISTRICT JUDGE